1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL AARON WITKIN,                    No.  2:13-cv-1931 KJN P

12              Plaintiff,

13         v.                                  ORDER

14    GARY SWARTHOUT, et al.,

15              Defendants.

16

17         Plaintiff is a state prisoner proceeding without counsel.  Plaintiff seeks relief pursuant to

18    42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C.

19    § 1915.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.

20    § 636(b)(1).  Plaintiff consented to proceed before the undersigned for all purposes.  See 28

21    U.S.C. § 636(c

22         Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C.

23    § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

24         Plaintiff is required to pay the statutory filing fee of $350.00 for this action.

25    28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing

26    fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will

27    direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

28    and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly

1    payments of twenty percent of the preceding month's income credited to plaintiff's trust account.

2    These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

3    the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

4    § 1915(b)(2).

5           The court is required to screen complaints brought by prisoners seeking relief against a

6    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

7    court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

8    "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

9    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

10          A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

11   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

12   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

13   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

14   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

15   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

16   Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

17   2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably

18   meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

19   1227.

20          Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

21   statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

22   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

23   Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

24   In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

25   formulaic recitation of the elements of a cause of action;" it must contain factual allegations

26   sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.

27   However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

28   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v.

1  Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

2  quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

3  true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

4  pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

5  (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

6          Plaintiff's forty page complaint alleges multiple constitutional violations against six

7  defendants.

8  Access to the Courts

9          Prisoners do not have a "freestanding right" to access the law library or to legal assistance.

10  Lewis v. Casey, 518 U.S. 343, 351 (1996).  Law libraries and legal assistance programs are only

11  the means of ensuring that a prisoner's fundamental right to access the courts is preserved.  Id.

12  The right to access to the courts includes the right to receive basic tools such as pens and paper

13  where they are necessary to filing the action.  Bounds v. Smith, 430 U.S. 817, 821 (1977), limited

14  in part on other grounds by Lewis, 518 U.S. at 354.  This access also includes a means of making

15  accurate copies, where they are required to file a pleading.  Allen v. Sakai, 48 F.3d 1082, 1089

16  (9th Cir. 1994).  However, the United States Supreme Court found the right to access the courts

17
                    does not guarantee inmates the wherewithal to transform
18                  themselves into litigating engines capable of filing everything from
                    shareholder derivative actions to slip-and-fall claims. The tools it
19                  requires to be provided are those that the inmates need in order to
                    attack their sentences, directly or collaterally, and in order to
20                  challenge the conditions of their confinement.  Impairment of any
                    other litigating capacity is simply one of the incidental (and
21                  perfectly constitutional) consequences of conviction and
                    incarceration.

22  Lewis v. Casey, 518 U.S. at 355.

23          In addition, Supreme Court law does not dictate a minimum number of hours or any other

24  requirement for satisfying the right of access to law libraries or legal assistance.  Vandelft v.

25  Moses, 31 F.3d 794, 796 (9th Cir. 1994); Walker v. Mintzes, 771 F.2d 920, 931 (6th Cir. 1985)

26  (stating that the Supreme Court in Bounds did not prescribe a specific amount of library time).

27  Several courts have refused to find constitutional violations where inmates' access to law libraries

28  was restricted.  See, e.g., Rhinehart v. Gomez, 1995 WL 364339 (N.D. Cal. June 8, 1995)

1   (finding no denial of access to courts where prisoner could access law library for two hours every

2   two weeks); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (finding one hour per week in

3   law library of city jail did not violate inmate's constitutional rights).  But cf. Williams v. Leeke,

4   584 F.2d 1336, 1338, 1340 (4th Cir. 1978) (finding three forty-five minute library sessions per

5   week to be inadequate access); United States v. Janis, 820 F. Supp. 512, 515 (S.D. Cal. 1992)

6   (ordering that inmate representing himself in criminal trial be given library access ten hours per

7   week if requested).  Restrictions allowing two hours of library access per week for inmates

8   without court deadlines and four hours per week for those with verified deadlines, were held to be

9   "reasonable as a matter of law" by another district court.  Zatko v. Rowland, 835 F. Supp. 1174,

10   1177 (N.D. Cal. 1993).

11        To state a claim for denial of access to the courts, a plaintiff must allege a specific actual

12   injury involving a nonfrivolous legal claim, Lewis v. Casey, 518 U.S. at 351-55, and must allege

13   facts showing that he "could not present a claim to the courts because of the [defendants'] failure

14   to fulfill [their] constitutional obligations."  Allen, 48 F.3d at 1091.  There are two types of

15   access-to-court claims:  backward-looking and forward-looking.  See Christopher v. Harbury, 536

16   U.S. 403, 413-14 (2002).  A backward-looking claim concerns a lost opportunity to litigate,

17   whereas a forward-looking claim concerns "official action [that] is presently denying an

18   opportunity to litigate for a class of potential plaintiffs."  Id. at 413.  Here, plaintiff claims he was

19   impaired in his ability to prosecute his habeas corpus actions because he was prevented from

20   filing objections. Thus, he is making a backward-looking claim.

21        To plead a backward-looking denial of access claim, plaintiff must allege three elements.

22   First, he must show he suffered an "actual injury."  Lewis v. Casey, 518 U.S. at 348.  An "actual

23   injury" is "actual prejudice with respect to contemplated or existing litigation, such as the

24   inability to meet a filing deadline or to present a claim."  Id.  The failure to demonstrate an actual

25   injury is jurisdictional.  Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to

26   show that a 'nonfrivolous legal claim had been frustrated' is fatal to his Bounds claim").  To

27   suffer an actual injury, the underlying litigation which was impeded must be non-frivolous.  To

28   demonstrate this fact, the underlying claim must be set forth in the pleading "as if it were being

4

1   independently pursued." Christopher, 536 U.S. at 417.  Second, plaintiff must allege prison

2   officials frustrated the litigation, and third, he must show that a remedy is not otherwise available

3   in a future suit.  Id. at 413-15.

4           Here, plaintiff has not met the threshold requirement of demonstrating that he was

5   constitutionally entitled to access the law library.  Plaintiff states he was impaired in his ability to

6   file objections to findings and recommendations in a habeas proceeding, but this was not during

7   the pleading stage of the proceedings.  See Lewis v. Casey, 518 U.S. at 354-55; Madrid v.

8   Gomez, 190 F.3d 990, 995 (9th Cir. 1999); Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995)

9   ("[W]e conclude the Supreme Court has clearly stated that the constitutional right of access

10  requires a state to provide a law library or legal assistance only during the pleading stage of a

11  habeas or civil rights action.").  Rather, plaintiff contends his law library access was impaired

12  from January 29, 2013, to February 1, 2013, and that he "was denied critical hours of research

13  time which prejudiced his objections and caused [Witkin v. Yates, Case No. 2:10-cv-0091 GEB

14  DAD (E.D. Cal.)] to be dismissed."  (ECF No. 1 at 7.)  Because the impairment did not occur

15  during the pleading stage, plaintiff fails to state a cognizable access to the courts claim.

16          In addition, review of the docket in Case No. 2:10-cv-0091 GEB DAD, reflects that the

17  plaintiff had multiple opportunities to file briefs; indeed, the court referred to plaintiff's filings as

18  "voluminous," and ordered two rounds of supplemental briefing at different times in the

19  proceedings.  Id. (ECF No. 69 at 4.)  Findings and Recommendations issued on January 30, 2013.

20  Id.  Plaintiff filed objections on February 15, 2013, and filed an amendment to his objections on

21  February 26, 2013, both of which the district court considered in reviewing the findings and

22  recommendations.  Id. (ECF Nos. 70, 71.)

23          Moreover, plaintiff's petition for writ of habeas corpus was dismissed because it was filed

24  beyond the statute of limitations period.  Id. (ECF Nos. 69, 72.)  The court found the statute of

25  limitations period expired on June 23, 2008, and plaintiff did not file his federal petition until

26  December 9, 2009, almost one and a half years too late.  Id. (ECF No. 69 at 7-8.)  Also, the

27  district court declined to issue a certificate of appealability.  Id.  Thus, plaintiff cannot

28  demonstrate actual injury based on the dismissal of his habeas petition in Case No. 2:10-cv-0091

1    GEB DAD, because the action was dismissed as time-barred, and not as a result of plaintiff's

2    alleged missed opportunity to adequately research his objections to the findings and

3    recommendations.

4           Plaintiff's failure to demonstrate an actual injury is jurisdictional.  Alvarez, 518 F.3d at

5    1155 ("Failure to show that a "nonfrivolous legal claim had been frustrated" is fatal").  Thus,

6    plaintiff should not renew his access to the courts claim in any amended complaint.

7    Outdoor Exercise

8           Plaintiff contends that he was denied access to outdoor exercise from March 8, 2013, to

9    June 6, 2013.  Plaintiff claims he suffered back pain, neck pain, headaches, muscle aches,

10   lethargy, and respiratory problems during this period.  (ECF No. 1 at 9 n.3.)  Plaintiff alleges this

11   deprivation violated his Eighth and Fourteenth Amendment rights.

12          The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

13   Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and

14   unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S.

15   312, 319 (1986).  Neither accident nor negligence constitutes cruel and unusual punishment, as

16   "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the

17   conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

18   What is needed to show unnecessary and wanton infliction of pain "varies according to the nature

19   of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S.1, 5 (1992) (citing

20   Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim, the plaintiff must show,

21   objectively, that he suffered a "sufficiently serious" deprivation.  Farmer v. Brennan, 511 U.S.

22   825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The plaintiff must also show

23   that each defendant had, subjectively, a culpable state of mind in causing or allowing plaintiff's

24   deprivation to occur.  Farmer, 511 U.S. at 834.

25          Outdoor exercise is a basic human need protected by the Eighth Amendment, and the

26   denial of outdoor exercise may violate the Constitution, depending on the circumstances.

27   Richardson v. Runnels, 594 F.3d 666 (9th Cir. 2010); Norwood v. Vance, 591 F.3d 1062, 1070

28   (9th Cir. 2010).  While the "temporary denial of outdoor exercise with no medical effects is not a

1  substantial deprivation," <u>Norwood</u>, 591 F.3d at 1070 (internal quotation and citation omitted),

2  when an inmate alleges the denial of constitutionally adequate outdoor exercise, the inquiry is fact

3  specific.  In determining whether a deprivation of outdoor exercise is sufficiently serious, the

4  Court must consider the circumstances, nature, and duration of the deprivation.  <u>Spain v.</u>

5  <u>Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979).

6         The Ninth Circuit has clarified the elements necessary to state a deprivation that would

7  rise to the level of an Eighth Amendment violation:

8  An Eighth Amendment claim that a prison official has deprived
   inmates of humane conditions must meet two requirements, one
   objective and one subjective. <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087

9  (9th Cir. 1995). "Under the objective requirement, the prison
   official's acts or omissions must deprive an inmate of the minimal

10 civilized measure of life's necessities.  The subjective requirement,
   relating to the defendant's state of mind, requires deliberate

11 indifference." <u>Id.</u> (citations omitted).

12 <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132-33 (9th Cir. 2000).  Nevertheless, "the Ninth Circuit has not

13 identified a specific minimum amount of weekly exercise that must be afforded" under the Eighth

14 Amendment." <u>Jayne v. Bosenko</u>, 2009 WL 4281995, at *8 (E.D. Cal. Nov. 23, 2009) (citation

15 omitted).  Indeed, complete denial of outdoor exercise for a month is not unconstitutional.

16 <u>Hayward v. Procunier</u>, 629 F.2d 599, 603 (9th Cir. 1980) (denial of yard time for a month not

17 unconstitutional); <u>May v. Baldwin</u>, 109 F.3d 557, 565-66 (9th Cir. 1997) (denial of yard time for

18 21 days not unconstitutional).  However, in <u>Lopez v. Smith</u>, the Ninth Circuit found that

19 plaintiff's claim that he was denied all outdoor exercise for six and a half weeks met the objective

20 requirement for an Eighth Amendment claim.  <u>Id.</u>, 203 F.3d at 1132-33.  Furthermore, for a

21 temporary denial of exercise to be actionable, plaintiff must demonstrate an adverse medical

22 impact.  <u>Id.</u>, 203 F.3d at 1133 n.15 ("the clear implication of <u>May [v. Baldwin]</u> is that temporary

23 denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment

24 test, while long-term deprivations are substantial regardless of effects.").

25         Here, plaintiff alleges he was deprived of outdoor exercise for almost three months.  Thus,

26 plaintiff's allegations meet the objective requirement for an Eighth Amendment claim.  However,

27 plaintiff fails to allege facts demonstrating that each defendant named in connection with this

28 claim acted with a culpable state of mind.  It appears plaintiff may be able to state a cognizable

1    Eighth Amendment claim as to defendant Sanchez inasmuch as defendant Sanchez issued the

2    order depriving plaintiff of the right to exercise, and defendant Sanchez was allegedly informed

3    during his telephone conversation with defendant Wilkinson that plaintiff had a constitutional

4    right to outdoor exercise, yet defendant Sanchez did not modify the ordered deprivation.

5    However, plaintiff does not include sufficient factual allegations to demonstrate that defendants

6    Swarthout, Young, Popovits and Wilkinson were deliberately indifferent to plaintiff's right to

7    outdoor exercise.  Accordingly, plaintiff should only renew this claim in his amended complaint

8    as to those defendants for whom he can allege facts that meet the above standards.

9        In addition, plaintiff's claims regarding the deprivation of outdoor exercise are more

10   appropriately governed by the Eighth Amendment, not by substantive due process.  Plaintiff

11   properly invoked the Eighth Amendment to challenge issues related to his denial of outdoor

12   exercise.  The viability of his Eighth Amendment claims means that his Fourteenth Amendment

13   claims are duplicative.  See Graham v. Poole, 476 F. Supp.2d 257, 261 (W.D. N.Y. 2007).  The

14   Supreme Court has explained that "if a constitutional claim is covered by a specific constitutional

15   provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the

16   standard appropriate to that specific provision, not under the rubric of substantive due process."

17   County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting Lanier v. United States, 520

18   U.S. 259, 272 n.7 (1997)).  The Fourteenth Amendment offers plaintiff no greater protection than

19   the Eighth Amendment.  See Whitley, 475 U.S. at 312 (in excessive force case, Eighth

20   Amendment serves as the primary source of protection); Murphy v. Dowd, 975 F.2d 435 (9th Cir.

21   1992) (prisoner's Fourteenth Amendment claim concerning conditions of confinement subsumed

22   by Eighth Amendment claim).  Thus, plaintiff need not raise the Fourteenth Amendment in

23   connection with this allegation that he was denied his right to outdoor exercise in violation of the

24   Eighth Amendment.

25   Work vs. Law Library Access

26       Plaintiff contends that he was required to choose between working at his prison job and

27   using the prison law library, which he alleges violates his constitutional rights.  Plaintiff states

28   that he is required to give up approximately fifty percent of his possible library access, or to

8

1    surrender his work program assignment in exchange for unfettered court access.  (ECF No. 1 at

2    11.)  Plaintiff relies on Allen v. City and County of Honolulu, 39 F.3d 936, 940 (9th Cir. 1994)

3    (denial of summary judgment affirmed where inmate was housed in the special housing unit of

4    the prison, and was forced to choose between two clearly established rights:  the right to outdoor

5    exercise and the right to law library access).  Plaintiff seeks injunctive relief enjoining defendants

6    from enforcing the prison's policy that allegedly requires inmates to surrender their prison work

7    assignments to attend the law library.  (ECF No. 1 at 11.)  In a subsequent filing, plaintiff notes

8    that he successfully negotiated a job change such that his work hours no longer conflict with

9    times the law library is open.  (ECF No. 5.)

10            A plaintiff seeking injunctive relief "must establish that he is likely to succeed on the

11   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

12   balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

13   Natural Resources Defense Council, Inc., 55 U.S. 7, 20 (2008) (citations omitted).  An injunction

14   may only be awarded upon a clear showing that the plaintiff is entitled to relief.  Id. at 22 (citation

15   omitted).

16            In Hebbe v. Pliler, 627 F.3d 338, 343 (9th Cir. 2010), the Ninth Circuit found that forcing

17   a prisoner to choose between using the prison law library and exercising outdoors is

18   impermissible because an inmate cannot be forced to sacrifice one constitutionally protected right

19   for another.  But an inmate does not have a constitutional right to work.  Baumann v. Arizona

20   Dep't of Corrections, 754 F.2d 841, 845 (9th Cir. 1985).  Thus, plaintiff was not deprived of a

21   constitutional right by having to choose between work or attending the law library.  Moreover,

22   prisoners do not have a "freestanding right" to access the law library.  Lewis v. Casey, 518 U.S. at

23   351.  As set forth above, the Supreme Court does not dictate that prisoners must be provided a

24   certain amount of access to prison law libraries.  Because plaintiff's claim lacks merit, his motion

25   for injunctive relief is denied, and plaintiff should not renew this claim in his amended complaint.

26            Similarly, plaintiff's equal protection and state law claims which plaintiff pled based on

27   his allegations that his work program precluded unfettered law library access are also unavailing

28   and should not be included in any amended complaint.

1 <u>Retaliation</u>

2       Plaintiff raises multiple allegations that defendants retaliated against him.

3       In the prison context, allegations of retaliation against a prisoner's First Amendment rights

4 to speech or to petition the government may support a section 1983 claim. <u>Rizzo v. Dawson</u>, 778

5 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir.

6 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment

7 retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action

8 against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

9 chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

10 advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir.

11 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison

12 grievance is sufficient to support a claim under section 1983. <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288

13 (9th Cir. 2003). Retaliatory motive may be shown by the timing of the allegedly retaliatory act

14 and inconsistency with previous actions, as well as direct evidence. <u>Id.</u> at 1288-89.

15       Prisoner retaliation claims should be evaluated in light of <u>Sandin v. Conner</u>, 515 U.S. 472

16 (1995), in which the Supreme Court expressed disapproval of excessive judicial involvement in

17 day-to-day prison management.[1] <u>Pratt</u>, 65 F.3d at 807.

18       Here, plaintiff claims defendant Kosher allegedly retaliated against plaintiff "because of

19 his verbal objection to her November 3 assault on him" and demonstrated by her when she began

20 enforcing her library access policy against plaintiff. (ECF No. 1 at 20) This allegation fails to

21 state a claim of retaliation because it does not relate to protected conduct, as contemplated under

22 <u>Rhodes v. Robinson</u>. Moreover, plaintiff was not deprived of all access to the law library, but

23 alleges that defendant Kosher began enforcing an existing policy that only limited plaintiff's

24 access. Therefore, plaintiff should not renew this claim in his amended complaint.

25 ////

---

26 [1] In particular, the Supreme Court noted "the view expressed in several of our cases that federal
courts ought to afford appropriate deference and flexibility to state officials trying to manage a
27 volatile environment," especially with regard to "the fine-tuning of the ordinary incidents of
prison life, a common subject of prisoner claims" under section 1983. <u>Sandin</u>, 515 U.S. at 482-
28 83.

1        However, plaintiff states a potentially cognizable retaliation claim against defendant

2     Kosher based on plaintiff's allegations that Kosher ejected plaintiff from the library, denied

3     plaintiff PLU status, and wrote a rules violation report against plaintiff in retaliation for plaintiff

4     filing grievances.  These claims against defendant Kosher may be renewed in his amended

5     complaint.

6        Plaintiff also claims that defendants Sanchez, Young, and Popovits violated plaintiff's

7     First and Fourth Amendment rights by initiating prison disciplinary proceedings without probable

8     cause in order to discourage plaintiff from seeking redress through prison grievances.  (ECF No. 1

9     at 22.)  However, plaintiff fails to identify which prison disciplinary these defendants allegedly

10    initiated, and fails to allege specific facts as to each defendant's specific involvement therewith.

11    Moreover, prison inmates have very limited Fourth Amendment protections.  Plaintiff fails to

12    explain how his Fourth Amendment rights were violated.  It is unclear from plaintiff's vague

13    allegations whether plaintiff can state cognizable First or Fourth Amendment claims against

14    defendants Sanchez, Young and Popovits in connection with their alleged roles in the prison

15    disciplinary process.

16        In addition, plaintiff claims that defendant Wilkinson wrote a rules violation report against

17    plaintiff "because [plaintiff] protested [Wilkinson's] denial of his Eighth Amendment rights."

18    (ECF No. 1 at 25.)  Plaintiff alleges that defendant Wilkinson searched plaintiff's bed area on

19    March 21, and claimed that there was "a state sheet hanging" from plaintiff's bed, and that she

20    had observed this misconduct on March 14 and March 20, and therefore issued the rules violation

21    report ("RVR").  (ECF No. 1 at 10.)  Plaintiff complains that defendant Wilkinson failed to first

22    write a CDC-128A, rather than immediately issue a CDC-115, which he claims was mandatory,

23    and contends he had witness statements confirming nothing was hanging from his bunk on March

24    21.  (Id.)  The necessary elements of a retaliation claim are set forth above.  Plaintiff's allegations,

25    without more, fail to state a cognizable retaliation claim against defendant Wilkinson.

26    Challenges to Prison Disciplinary Proceedings

27        Plaintiff claims that he was subjected to disciplinary proceedings that were based on false

28    information, and that he was subjected to at least one hearing in which proper procedures were

1    not followed.

2        "A prisoner has no constitutionally guaranteed immunity from being wrongly or falsely

3    accused of conduct which may result in the deprivation of a protected liberty interest." Lopez v.

4    Celaya, 2008 WL 205256 at *5 (N.D. Cal. Jan. 23, 2008), citing, *inter alia*, Sprouse v. Babcock,

5    870 F.2d 450, 452 (8th Cir. 1989).  Although the filing of a false disciplinary action against an

6    inmate is not a per se civil rights violation, there are two ways that allegations that an inmate has

7    been subjected to a false claim can state a cognizable civil rights claim.  The first is when the

8    inmate alleges that the false report was in retaliation for the exercise of a constitutionally

9    protected right under the First Amendment.  See Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997)

10   (retaliation claim must rest on proof that defendant filed disciplinary action in retaliation for

11   inmate's exercise of his constitutional rights and that the retaliatory action advanced no legitimate

12   penological interest); Newsom v. Norris, 888 F.2d 371, 377 (6th Cir. 1989).  The second is when

13   the inmate is not afforded the procedural due process required by the due process clause in

14   connection with the issuance and hearing of disciplinary reports.  See Hanrahan v. Lane, 747 F.2d

15   1137, 1141 (7th Cir. 1984) (claim that prison guard planted false evidence which resulted in

16   disciplinary infraction fails to state a cognizable civil rights claim where procedural due process

17   protections are provided).

18       "The requirements of procedural due process apply only to the deprivation of interests

19   encompassed by the Fourteenth Amendment's protection of liberty and property." Board of

20   Regents v. Roth, 408 U.S. 564, 569 (1972).  State statutes and prison regulations may grant

21   prisoners liberty interests sufficient to invoke due process protection.  Meachum v. Fano, 427

22   U.S. 215, 223-27 (1976).  However, the Supreme Court has significantly limited the instances in

23   which due process can be invoked.  Pursuant to Sandin, 515 U.S. at 483, a prisoner can show a

24   liberty interest at stake under the Due Process Clause of the Fourteenth Amendment only if he

25   alleges a change in confinement that imposes an "atypical and significant hardship . . . in relation

26   to the ordinary incidents of prison life." Id. at 484 (citations omitted); Neal v. Shimoda, 131 F.3d

27   818, 827-28 (9th Cir. 1997).

28   ////

1        Specifically, when a liberty interest has been implicated as the result of a disciplinary

2  charge, the Fourteenth Amendment requires prison officials to provide the prisoner with: (1)

3  written notice of the charges at least 24-hours before the hearing; (2) the opportunity to appear in

4  person at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written

5  statement by the factfinders of the evidence relied on for their decision and the reasons for the

6  action taken by the committee.  Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974); Neal, 131

7  F.3d at 830; Freeman v. Rideout, 808 F.2d 949, 952 (2d Cir. 1986) ("Although prisoners are

8  entitled to be free from arbitrary action and conduct of prison officials, the protections against

9  arbitrary action 'are the procedural due process requirements as set forth in Wolff v.

10  McDonnell.'").  Once these protections have been provided, due process is satisfied if there is any

11  evidence in the record that could support the conclusion reached by the officials.    Toussaint v.

12  McCarthy, 801 F.2d 1080, 1104-05 (9th Cir. 1986), abrogated in part on other grounds by Sandin,

13  515 U.S. at 484; see also Superintendent v. Hill, 472 U.S. 445, 455 (1985) (even where the

14  punishment is the loss of good time credits, the requirements of due process are satisfied if there

15  is even "some evidence" to support the prison's disciplinary decision).

16        Thus, plaintiff cannot state a cognizable Eighth Amendment violation based solely on an

17  allegation that defendants issued a false rules violation against plaintiff.  Cota v. Scribner, 2011

18  WL 4914934, *7 (S.D. Cal. 2011).

19        To the extent that plaintiff claims a particular RVR was issued in retaliation for plaintiff

20  filing administrative grievances, plaintiff states a potentially cognizable First Amendment claim,

21  as set forth above.

22        In connection with defendant Sanchez, plaintiff claims defendant Sanchez denied plaintiff

23  witnesses at the disciplinary hearing, which states a potentially cognizable procedural due process

24  claim and may be included in plaintiff's amended complaint.

25        However, to the extent plaintiff claims there was no evidence to support the disciplinary,

26  or seeks to reverse an RVR, plaintiff's claims may be barred under Heck v. Humphrey, 512 U.S.

27  477 (1994).  The Supreme Court has extended the Heck bar to section 1983 suits that would

28  negate prison disciplinary proceedings that affect good-time credits.  Edwards v. Balisok, 520

1    U.S. 641, 648 (1997).  A prisoner's challenge to a disciplinary hearing procedure is barred if

2    judgment in his favor would necessarily imply the invalidity of the resulting loss of good-time

3    credits.  Id. at 646.  So, a "prisoner's § 1983 action is barred (absent prior invalidation) -- no

4    matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit

5    (state conduct leading to conviction or internal prison proceedings ) -- if success in that action

6    would necessarily demonstrate the invalidity of confinement or its duration."  Wilkinson v.

7    Dotson, 544 U.S. 74, 81-82 (2005).

8         From the few allegations provided by plaintiff, it appears that a challenge to the prison

9    disciplinary would necessarily implicate the guilty finding because plaintiff claims he was not

10   disruptive, and did not "tent" his bunk.  However, in an abundance of caution, plaintiff is granted

11   leave to file an amended complaint should he be able to allege facts demonstrating that his

12   challenge to the prison disciplinary proceedings are not barred under Heck.

13   Conspiracy

14        Plaintiff claims defendants Sanchez and Wilkinson conspired to violate plaintiff's right to

15   outdoor exercise because despite plaintiff informing them that plaintiff has a constitutional right

16   to outdoor exercise, in a phone call on March 14, both defendants agreed that plaintiff would not

17   be permitted outside of the housing unit for the entire 90 day period.  (ECF No. 1 at 9, 25.)

18   However, plaintiff's conspiracy claim is belied by his own allegations.  Plaintiff alleges that he

19   was assessed an RVR for disruptive behavior, and that defendant Sanchez imposed the following

20   punishment:  plaintiff was barred from the law library and from yard privileges for 90 days.

21   (ECF No. 1 at 9.)  Plaintiff claims that on March 14, after the RVR punishment was imposed, he

22   asked defendant Wilkinson when plaintiff could resume outdoor exercise, and that he and

23   Wilkinson "had a disagreement over whether outdoor exercise was a right or a privilege."  (Id.)

24   Wilkinson then called defendant Sanchez, and during their phone conversation, they agreed

25   plaintiff would not be permitted outside for 90 days.  (Id.)  Taking plaintiff's complaint as true,

26   such allegations do not rise to the level of a conspiracy.  Rather, plaintiff sustained the loss of

27   outside exercise as a punishment in the RVR process.  Defendant Wilkinson's mere agreement

28   with defendant Sanchez' position on Sanchez' ruling does not constitute a conspiracy, and it does

14

1   not rise to the level of a constitutional violation.  Accordingly, plaintiff should not include this

2   claim in his amended complaint.

3   Respondeat Superior

4          As set forth above, plaintiff names six individuals as defendants herein.  Plaintiff includes

5   specific factual allegations as to defendants Kosher, Wilkinson, and Sanchez, but fails to allege

6   facts demonstrating that defendants Swarthout, Young, and Popovits were specifically involved in

7   the claims the undersigned found potentially cognizable.

8          The Civil Rights Act under which this action was filed provides as follows:

9                  Every person who, under color of [state law] . . . subjects, or causes
                   to be subjected, any citizen of the United States . . . to the
10                 deprivation of any rights, privileges, or immunities secured by the
                   Constitution . . . shall be liable to the party injured in an action at
11                 law, suit in equity, or other proper proceeding for redress.

12  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

13  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

14  Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

15  liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

16  affirmative link between the incidents of police misconduct and the adoption of any plan or policy

17  demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

18  to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

19  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

20  legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

21  588 F.2d 740, 743 (9th Cir. 1978).

22         Moreover, supervisory personnel are generally not liable under section 1983 for the

23  actions of their employees under a theory of respondeat superior and, therefore, when a named

24  defendant holds a supervisorial position, the causal link between him and the claimed

25  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th

26  Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld,

27  589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal

28  participation), cert. denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning

1    the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v.

2    Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual

3    allegations of personal participation is insufficient).

4         Here, plaintiff contends defendants Swarthout, Young, and Popovits "reviewed and

5    sustained" the RVRs.  Such allegations are insufficient to demonstrate these defendants acted in

6    retaliation.  Plaintiff may only sustain a retaliation claim against individuals who allegedly acted

7    in retaliation.  Thus, where the alleged retaliation occurred in the initiation of the grievance, those

8    involved in the subsequent hearing process, as well as the review process, are not liable based

9    solely on their role in the process.  Plaintiff must allege facts demonstrating the individual's

10   retaliatory intent.  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported

11   by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

12   (citing Bell Atlantic Corp., 550 U.S. at 555).  Plaintiff must set forth "sufficient factual matter,

13   accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic

14   Corp., 550 U.S. at 570).  Mere acquiescence is insufficient.  Thus, plaintiff should not name

15   individuals as defendants in the amended complaint unless he can plead facts meeting these

16   standards.

17   Unrelated State Law Claims

18        Plaintiff alleges that on November 3, 2012, defendant Kosher attacked plaintiff with a

19   rubber band, causing injury to plaintiff's head, face and neck, as well as emotional distress.

20   Plaintiff presses state law claims for assault, battery, and the negligent and intentional infliction

21   of emotional distress.  This claim is not common to all named defendants, and does not arise from

22   the same transaction as plaintiff's other federal claims.  This court is not inclined to exercise

23   supplemental jurisdiction over this claim, and plaintiff should not renew this claim in his

24   amended complaint.

25   Conclusion

26        The court finds the allegations in plaintiff's complaint so vague and conclusory that it is

27   unable to determine whether the current action is frivolous or fails to state a claim for relief.  The

28   court has determined that the complaint does not contain a short and plain statement as required

1    by Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible pleading policy, a

2    complaint must give fair notice and state the elements of the claim plainly and succinctly.  Jones

3    v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must allege with at least

4    some degree of particularity overt acts which defendants engaged in that support plaintiff's claim.

5    Id.  Because plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), the

6    complaint must be dismissed.  The court will, however, grant leave to file an amended complaint.

7         If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

8    about which he complains resulted in a deprivation of plaintiff's constitutional rights.  Rizzo v.

9    Goode, 423 U.S. at 371.  Also, the complaint must allege in specific terms how each named

10   defendant is involved.  Id.  There can be no liability under 42 U.S.C. § 1983 unless there is some

11   affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.;

12   May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th

13   Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil rights

14   violations are not sufficient.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

15        In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

16   make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

17   complaint be complete in itself without reference to any prior pleading.  This requirement exists

18   because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v.

19   Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original

20   pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an

21   original complaint, each claim and the involvement of each defendant must be sufficiently

22   alleged.

23        Pursuant to Fed. R. Civ. P. 20(a)(2), multiple defendants may be joined in one action if:

24   (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect

25   to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

26   (2) any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P.

27   20(a)(2); see also Coughlin v. Rogers, 130 F.3d 1348, 1350-52 (9th Cir. 1997).  As long as these

28   requirements are satisfied, a plaintiff may join as many claims as he has against any defendant,

17

1    even if those claims are unrelated.  See Fed. R. Civ. P. 18(a).

2         Unrelated claims against different defendants, however, should be pursued in separate

3    lawsuits.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  This rule is intended "not only

4    to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to

5    ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to

6    three the number of frivolous suits or appeals that any prisoner may file without prepayment of

7    the required fees. 28 U.S.C. § 1915(g)."  Id.  If the test for permissive joinder is not satisfied, a

8    court, in its discretion, may sever the misjoined parties.  See Fed. R. Civ. P. 21.

9         In accordance with the above, IT IS HEREBY ORDERED that:

10        1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

11        2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

12   is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

13   § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

14   Director of the California Department of Corrections and Rehabilitation filed concurrently

15   herewith.

16        3.  Plaintiff's complaint is dismissed.

17        4.  Within thirty days from the date of this order, plaintiff shall complete the attached

18   Notice of Amendment and submit the following documents to the court:

19             a.  The completed Notice of Amendment; and

20             b.  An original and one copy of the Amended Complaint.

21   Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the

22   Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must

23   also bear the docket number assigned to this case and must be labeled "Amended Complaint."

24   Failure to file an amended complaint in accordance with this order may result in the dismissal of

25   this action.

26   ////

27   ////

28   ////

18

Case 2:13-cv-01931-GEB-KJN   Document 6   Filed 11/15/13   Page 19 of 20

1        5.  Plaintiff's motions for injunctive relief (ECF Nos. 1, 5) are denied.

2    Dated:  November 15, 2013

3

4    /witk1931.14

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL AARON WITKIN,                    No.  2:13-cv-1931 KJN P

12            Plaintiff,

13        v.                                  NOTICE OF AMENDMENT

14   GARY SWARTHOUT, et al,

15            Defendants.

16

17        Plaintiff hereby submits the following document in compliance with the court's order

18   filed_____.

19        _____         Amended Complaint
     DATED
20

21                                  _____
                                    Plaintiff

22

23

24

25

26

27

28