UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL WITKIN,

           Plaintiff,

    v.

G. SWARTHOUT, et al.,

           Defendants.

No.  2:13-cv-1931 KJN P

ORDER AND FINDINGS AND
RECOMMENDATIONS

I.  Introduction

       Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed two motions for partial summary judgment, and defendants filed a motion to dismiss.  In his first amended complaint ("FAC"), plaintiff raises multiple First Amendment retaliation claims against defendants Swarthout, Young, Popovits, Sanchez, Wilkinson, and Kosher, and Eighth Amendment claims against defendants Sanchez, Popovits, Young, and Swarthout, based on the alleged deprivation of outdoor exercise.  As set forth below, the undersigned denies plaintiff's motions for partial summary judgment without prejudice, and finds that defendants' motion to dismiss should be granted in part and denied in part.  Further, plaintiff's motion to strike defendants' reply is denied.

////

1

1    II.  Motions for Partial Summary Judgment

2         On March 7, 2014, plaintiff filed a motion for partial summary judgment, which was

3    served by mail on the office of the Attorney General on March 5, 2014.  However, defendants had

4    not yet been served.  Counsel for defendants accepted waiver of service on March 21, 2014; thus,

5    defendants had sixty days from March 21, 2014, in which to file a responsive pleading.  The

6    service of plaintiff's motion on the office of the Attorney General was premature and ineffective.

7    Thus, plaintiff's March 7, 2014 motion for partial summary judgment is denied without prejudice.

8         On July 8, 2014, plaintiff renewed his motion for partial summary judgment, claiming

9    there "is no dispute about any fact that would affect the outcome of this case."  (ECF No. 25 at 1.)

10   However, as defendants contend in their opposition, their motion to dismiss is pending; no

11   defendant has yet filed an answer; no discovery has yet taken place, and no discovery and

12   scheduling order has issued.  (ECF No. 26.)  Defendants have not taken plaintiff's deposition.

13        By order filed January 2, 2014, the undersigned found that plaintiff stated potentially

14   cognizable claims for relief based on plaintiff's Eighth Amendment and First Amendment

15   retaliation allegations against defendants Swarthout, Young, Popovits, Sanchez, Wilkinson, and

16   Kosher.  (ECF No. 11 at 2.)  Such claims involve the development of facts and evidence through

17   discovery.  For all of these reasons, the undersigned finds that plaintiff's renewed motion for

18   partial summary judgment is premature.  Plaintiff's motion is denied without prejudice to its

19   renewal once the court has issued a discovery and scheduling order, and all discovery has been

20   completed.  In other words, plaintiff shall file no further motions for summary judgment until

21   after discovery has closed.

22   III.  Motion to Dismiss

23        Pending before the court is defendants' motion to dismiss for failure to state a claim.  Fed.

24   R. Civ. P. 12(b)(6).  Plaintiff filed an opposition, and defendants filed a reply.  On July 8, 2014,

25   plaintiff filed a motion to strike portions of defendants' reply.  For the following reasons, the

26   undersigned recommends that defendants' motion should be granted in part and denied in part,

27   and plaintiff should be granted leave to file a second amended complaint.  Plaintiff's motion to

28   strike defendants' reply is denied.

1    A. <u>Legal Standard</u>

2    Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

3    "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

4    considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

5    must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89

6    (2007), and construe the pleading in the light most favorable to the plaintiff.  <u>Jenkins v.</u>

7    <u>McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir.

8    1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

9    than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

10   cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007).  In other words,

11   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

12   statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Furthermore, a claim

13   upon which the court can grant relief must have facial plausibility.  <u>Twombly</u>, 550 U.S. at 570.

14   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

15   draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556

16   U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

17   of a motion to dismiss for failure to state a claim.  <u>Hal Roach Studios v. Richard Reiner & Co.</u>,

18   896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

19   A motion to dismiss for failure to state a claim should not be granted unless it appears

20   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

21   entitle him to relief.  <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984).  In general, pro se

22   pleadings are held to a less stringent standard than those drafted by lawyers.  <u>Haines v. Kerner</u>,

23   404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  <u>Bretz</u>

24   <u>v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

25   interpretation of a pro se complaint may not supply essential elements of the claim that were not

26   pled.  <u>Ivey v. Board of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).

27   ////

28   ////

B. Plaintiff's Alleged Retaliation Claims

First, the undersigned will set forth the standards governing First Amendment retaliation standards, and will then address the claims as to each defendant.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  A retaliation claim has five elements:

> First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.1995). "[T]he mere threat of harm can be an adverse action. . . ." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal.  See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11.  That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the claim at the motion to dismiss stage.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).  A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of the institution." Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984).

Watison, 668 F.3d at 1114.

In order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

4

behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995), citing Dawson, 778 F.2d at 532.  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  Even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice; a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990).  Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).  Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities.

The court turns now to plaintiff's specific claims, addressed by defendant and topic.

### 1. Young

Plaintiff dismisses his retaliation claim against defendant Young.  (ECF No. 20 at 6.) Accordingly, plaintiff's retaliation claim against defendant Young is dismissed from this action. Fed. R. Civ. P. 41(a).

### 2. Kosher

Defendants move to dismiss, to the extent raised, plaintiff's claims that defendant Kosher retaliated against plaintiff based on verbal complaints about the conditions of confinement.  (ECF No. 18-1 at 6.)  However, in his opposition, plaintiff clarified that he is not claiming that defendant Kosher retaliated against plaintiff based on plaintiff's verbal complaints on November 7, 2012.  (ECF No. 20 at 4.)  Thus, this action proceeds on plaintiff's allegations that Kosher retaliated against plaintiff based on plaintiff's grievances against Kosher filed on November 7 and 9, 2012, and February 27, 2013.  (Id.)

////

### 3.  Popovits and Swarthout:  Alleged Retaliation re Outdoor Exercise

Plaintiff contends that defendants Popovits and Warden Swarthout retaliated against plaintiff "because of all the grievances he filed," by refusing to restore plaintiff's Eighth Amendment rights when plaintiff put them on notice of the constitutional violation.  (ECF No. 9 at 14.)  Defendant Popovits is defendant Sanchez' supervisor.  Plaintiff asserts that on March 26, 2012, he sent Warden Swarthout a CDCR 22 form informing him that plaintiff was being deprived of outdoor exercise.  On March 27, 2012, plaintiff "contacted Swarthout by legal mail, for a 'Supervisor's Review'" of the March 27, 2012 decision by Sanchez in which Sanchez sustained his decision to deny plaintiff outdoor exercise for ninety days.  (ECF No. 9 at 10.)  On April 4, 2012, plaintiff sent a CDCR 22 form to Warden Swarthout informing him that plaintiff's constitutional right to outdoor exercise was still being violated.  On April 11, 2012, plaintiff sent Popovits a CDCR 22 form regarding the deprivation of outdoor exercise.  (ECF No. 9 at 10.)  On April 17, 2012, Popovits responded, allegedly claiming plaintiff's access to outdoor exercise is a "privilege."  (ECF No. 9 at 11.)  Plaintiff contends that California law required each supervising defendant to restore plaintiff's Eighth Amendment to exercise by March 18.  (ECF No. 9 at 11.)

In his opposition, plaintiff contends that defendants Swarthout and Popovits were required to correct plaintiff's allegedly illegal punishment pursuant to 15 C.C.R. § 3322(c).  Plaintiff alleges that their failure to do so constitutes retaliation.

Defendants contend that plaintiff failed to allege facts demonstrating that either defendant Swarthout or Popovits caused plaintiff to lose his access to outdoor exercise, and that any purported liability based on a theory of respondeat superior is unavailing based on plaintiff's failure to allege facts demonstrating their personal involvement in the alleged deprivation of such rights.  In addition, defendants contend that plaintiff cannot meet the fifth prong of Robinson, because plaintiff's outdoor exercise privileges were revoked as punishment following plaintiff's rules violation for disruptive behavior.  Defendants argue that disciplining an inmate for disruptive behavior serves the legitimate correctional goal of maintaining the "peaceable operation of the prison."  (ECF No. 18-1 at 9, quoting Bradley v. Hall, 64 F.3d 1276, 1281 (9th Cir. 1995).)  Moreover, defendants contend that plaintiff fails to cite authority that supports his

6

1   proposition that Swarthout and Popovits had a legal duty to restore plaintiff's Eighth Amendment

2   right to outdoor exercise.

3       Indeed, the prison regulation cited by plaintiff does not so provide. Title 15 of the

4   California Code of Regulations, section 3322, addressing "length of confinement," provides, in

5   pertinent part:

6           (c) No inmate shall be confined to quarters or otherwise deprived of
            exercise as a disciplinary disposition longer than ten days unless, in
7           the opinion of the institution head, the inmate poses such an
            extreme management problem or threat to the safety of others that
8           longer confinement is necessary. The director's written approval is
            required for such extended confinement.
9

10  Cal. Code Regs. tit. 15, § 3322(c).  Plaintiff cites no other California law that purportedly

11  required Swarthout or Popovits to restore plaintiff's access to outdoor exercise.[1]

12      The Civil Rights Act under which this action was filed provides as follows:

13          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the
14          deprivation of any rights, privileges, or immunities secured by the
            Constitution . . . shall be liable to the party injured in an action at
15          law, suit in equity, or other proper proceeding for redress.

16  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

17  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

18  Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

19  liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

20  affirmative link between the incidents of police misconduct and the adoption of any plan or policy

21  demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

22  to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

23  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

24  legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

25  588 F.2d 740, 743 (9th Cir. 1978).

26

27  ───────────────────
    [1]  Plaintiff's argument that defendants Swarthout and Popovits were required to restore plaintiff's
    outdoor exercise is more appropriately raised in the context of plaintiff's Eighth Amendment
28  claim.

1    Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

2    their employees under a theory of respondeat superior and, therefore, when a named defendant

3    holds a supervisorial position, the causal link between him and the claimed constitutional

4    violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)

5    (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d

6    438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert.

7    denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of

8    official personnel in civil rights violations are not sufficient.  See Ivey, 673 F.2d at 268

9    (complaint devoid of specific factual allegations of personal participation is insufficient).

10    First, plaintiff cannot demonstrate a causal connection between plaintiff's loss of outdoor

11    exercise and subsequent acts by defendants Swarthout and Popovits in addressing plaintiff's

12    CDCR 22 forms concerning the alleged deprivation of his constitutional rights.  Plaintiff

13    concedes that defendant Sanchez imposed the ninety-day bar from outdoor exercise in connection

14    with the adjudication of the rules violation imposed for plaintiff's alleged disruptive behavior.

15    (ECF No. 9 at 7.)  Review of the rules violation report ("RVR"), Log No. SD-13-02-0056,

16    provided by plaintiff confirms that defendant Sanchez imposed the bar.  (ECF No. 12.)  The act of

17    receiving copies of plaintiff's CDCR 22 forms does not, standing alone, provide a causal

18    connection to support a retaliation claim.  A plaintiff's mere speculation that there is a causal

19    connection is insufficient.  See Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th

20    Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of

21    summary judgment") (citation omitted).  In addition, plaintiff does not allege that defendant

22    Swarthout responded to the CDCR 22 forms; rather, defendant Swarthout referred some of them

23    to other prison officials.  (ECF No. 9 at 6, 9-10.)

24    Second, plaintiff alleges no specific facts demonstrating or even suggesting that

25    defendants Swarthout or Popovits acted with a retaliatory motive in connection with plaintiff's

26    effort to have his outdoor exercise restored.  The act of receiving copies of plaintiff's CDCR 22

27    forms does not, standing alone, raise an inference that their failure to restore plaintiff's access to

28    outdoor exercise was retaliatory in nature.  Rather, plaintiff must allege specific facts

8

1   demonstrating a retaliatory motive.  Similarly, plaintiff's claim that defendant Popovits denied

2   plaintiff's request claiming outdoor exercise is a "privilege" does not evidence a retaliatory

3   motive.

4        Third, the undersigned has reviewed the exhibits provided by plaintiff on January 14,

5   2014, as well as his original and FAC, and the briefing in connection with this motion.  It does

6   not appear that plaintiff can allege facts demonstrating that defendants Swarthout and Popovits

7   retaliated against plaintiff by allegedly failing to restore plaintiff's access to outdoor exercise.

8   Plaintiff has had an opportunity to amend and appears unable to allege facts showing a cognizable

9   First Amendment retaliation claim for relief against defendants Swarthout and Popovits based on

10   their role in handling plaintiff's CDCR 22 forms objecting to his deprivation of outdoor exercise.

11   Therefore, the court finds that further leave to amend such claims would be futile.  See Gompper

12   v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002) (leave to amend need not be granted where

13   amendment would be futile).

14        Thus, defendants' motion to dismiss plaintiff's retaliation claims against defendants

15   Swarthout and Popovits based on their role in handling plaintiff's CDCR 22 forms in connection

16   with plaintiff's outdoor exercise claim should be granted with prejudice.

17             4.  Sanchez - Alleged Retaliation re Outdoor Exercise

18        In the FAC, plaintiff alleges that defendant Sanchez retaliated against him by refusing to

19   restore his outdoor exercise because plaintiff filed numerous prison grievances.  (ECF No. 9 at

20   14.)  Plaintiff alleges the following in support:  On March 8, 2013, defendant Sanchez was the

21   senior hearing officer who presided over the rules violation hearing based on the RVR issued by

22   defendant Kosher which alleged that plaintiff engaged in disruptive behavior on February 27,

23   2013, Log No. SD-13-02-0056.  (ECF Nos. 9 at 7; 12 at 97.)  Sanchez found plaintiff guilty, and

24   imposed the maximum punishment even though plaintiff had no prior rule violations.  (ECF No. 9

25   at 7.)  Plaintiff was denied access to the law library, outdoor exercise, vendor packages, canteen,

26   and telephone calls for ninety days.  Immediately after the hearing, plaintiff avers that Sanchez

27   contacted plaintiff's housing unit to have plaintiff's punishments "conspicuously posted" in the

28   building officer's station to ensure enforcement.  Plaintiff contends this posting made all the

building officers aware of plaintiff's disciplinary conviction, the surrounding circumstances, and thus his "penchant for filing numerous grievances." (ECF No. 9 at 8.)  Plaintiff asserts that staff discussed the issue at length, labeled plaintiff a "troublemaker" and "legal beagle," and decided to "circle the wagons." (Id.)  On March 14, 2013, after arguing with plaintiff about the denial of outdoor exercise, defendant Wilkinson called Sanchez, Wilkinson's supervisor, and plaintiff alleges that during the call they agreed that plaintiff would not be allowed outside the housing unit for the entire ninety days.

Defendants contend that plaintiff's allegations fail to meet the second prong of Robinson, and argue that disciplining an inmate for disruptive behavior serves the legitimate correctional goal of maintaining the "peaceable operation of the prison." (ECF No. 18-1 at 9, quoting Bradley, 64 F.3d at 1281.)  Moreover, defendants contend that plaintiff fails to cite authority that supports his proposition that Sanchez had a legal duty to restore plaintiff's Eighth Amendment right to outdoor exercise.

In opposition, plaintiff argues that at the time of the RVR hearing, plaintiff had filed five grievances, "which Sanchez was apparently well aware of since he was responsible for contacting the housing unit on March 8, 2013 and informing staff of plaintiff's 'penchant for filing numerous grievances.'" (ECF No. 20 at 5.)  Sanchez received a complaint regarding plaintiff's deprivation of outside exercise on March 27, 2013, and plaintiff claims Sanchez was legally required to restore plaintiff's access to outside exercise on March 18.  Further, plaintiff alleges that defendant Sanchez did not know plaintiff prior to March 8, and thus was only aware that plaintiff had filed many appeals and that he had complained to Sanchez directly about his constitutional rights. (ECF No. 20 at 5.)  Thus, plaintiff concludes, "there is no imaginable reason why [Sanchez] would refuse 'to perform an act which he is legally required to do' other than to retaliate against plaintiff's First Amendment activities." (ECF No. 20 at 5.)  Plaintiff argues that there is no legitimate correctional goal in upholding an unconstitutional punishment that is prohibited by state correctional regulations.

In reply, defendants contend plaintiff failed to plead a causal connection between Sanchez finding plaintiff guilty of the rules violation and imposing punishment, and plaintiff filing prison

10

grievances.  Defendants point out that plaintiff failed to allege facts demonstrating Sanchez was aware of plaintiff's grievances on March 8; indeed, plaintiff alleges that by March 14, six days after the RVR hearing, defendants, in general, were "aware of his penchant for filing grievances." (ECF No. 23 at 3.)

Defendants' arguments are well-taken.  Plaintiff's conclusory statement that Sanchez was "fully aware" of plaintiff's grievances is not supported by the facts in plaintiff's FAC.  Plaintiff alleged no facts suggesting defendant Sanchez was aware of plaintiff's grievances at the March 8 hearing when Sanchez imposed the punishments.  It does not follow that the mere posting of plaintiff's punishments would expose all of the circumstances of the RVR, and the conclusions plaintiff draws from such posting are not attributable to Sanchez, absent facts connecting them. In any event, plaintiff fails to connect Sanchez's actions in adjudicating the RVR and ensuring the enforcement of the punishment to any retaliation on Sanchez's part.  Rather, punishment was imposed based on Sanchez's finding that plaintiff was guilty of disruptive behavior, a legitimate penological concern in the prison setting.  Moreover, defendant Sanchez' receipt of and response to plaintiff's CDCR 22 form contending that the ninety day deprivation of outdoor exercise violated his Eighth Amendment rights, standing alone, fails to suggest a retaliatory motive on the part of Sanchez.  Defendants' motion to dismiss plaintiff's retaliation claim against defendant Sanchez should be granted.[2]

However, the undersigned notes that in plaintiff's July 8, 2014 filing, he claimed, for the first time, that defendant "also extended plaintiff's disciplinary hearing, which are generally about 15 minutes long, to almost 2 hours in order to interrogate plaintiff about his First Amendment activities."  (ECF No. 25 at 6.)  It is unclear whether plaintiff can allege specific facts from this alleged "interrogation" that would support a claim for retaliation, particularly in light of the finding that plaintiff had engaged in disruptive behavior.  But in an abundance of caution, plaintiff is granted leave to amend his retaliation claim against defendant Sanchez.

---

[2]  Plaintiff's argument that defendant Sanchez was required to restore plaintiff's outdoor exercise is more appropriately raised in the context of plaintiff's Eighth Amendment challenge.  As explained in addressing plaintiff's retaliation claim against defendants Swarthout and Popovits, the regulation upon which plaintiff relies did not specifically require such restoration.

5. Defendant Popovits:  Bunk Area Search

In his FAC, plaintiff alleges that defendant Popovitz retaliated against plaintiff on April 17, 2013, by ordering plaintiff's bunk area to be destroyed because of plaintiff's three grievances about his Eighth Amendment rights, which plaintiff claims Popovits responded to the same day. (ECF No. 9 at 14.)  Plaintiff alleges such actions did not advance a correctional goal, and chilled plaintiff's First Amendment rights because plaintiff believed his personal property would be damaged if he asserted his rights.  (ECF No. 9 at 15.)  Specifically, plaintiff claims that, "in conjunction with the 3 [CDCR] responses," defendant Popovits "dispatched custody officers to ransack plaintiff's bed area."  (ECF. No. 9 at 11.)

In his opposition, plaintiff clarifies that he submitted CDCR 22 forms[3] to defendant Popovitz, and he responded on April 17, 2013.  Review of plaintiff's 602 appeal, Log. No. SOL-13-01135, reflects that plaintiff alleges that his fan was damaged during the search, and that plaintiff claimed his bed area was searched "immediately after Captain Popovits responded to three CDCR 22's" regarding the alleged violation of plaintiff's constitutional rights.  (ECF No. 12 at 122-23.)  In his response to the second level review, plaintiff stated:  "The entire time [plaintiff] has been housed at this prison this event is the only time his property was trashed in this manner, [plaintiff's] belongings were left spread out in a 30 foot radius."  (ECF No. 124 at 152.)

Herein, plaintiff alleges that his bed area was searched and ransacked because he filed grievances or CDCR 22 forms.  The First Amendment provides a right to petition the government for redress of grievances.  See Soranno's, 874 F.2c at 1314.  This right includes an inmate's right

---

[3]  Plaintiff states that up until January 1, 2012, the filing of a CDCR 22 form was a mandatory component of the appeals process and the failure to do so required rejection of the grievance. (ECF No. 20 at 3, citing Cal. Code Regs. tit. 15, § 3084.3(c)(4)(2011).)  Although prisoners are not required by regulations to submit a Form 22 as a prerequisite to a Form 602 appeal, CDCR's regulations accord substantial discretion to prison officials to decide whether to require a prisoner to complete the Form 22 process before accepting a Form 602 appeal.  See Coleman v. Hubbard, 2012 WL 3038571, at *9 (E.D. Cal. July 25, 2012) (exhaustion of the Form 22 process may be deemed a prerequisite to pursuing a Form 602 appeal).  The CDCR 22 form is a request for interview form used by prison officials in an effort to informally resolve the prisoner's concerns prior to the filing of a 602 formal appeal or grievance.

1   to file prison grievances.  Brodheim, 584 F.3d at 1269; Valandingham v. Bojorquez, 866 F.2d

2   1135, 1138 (9th Cir. 1989).  Cell searches can be adverse action by a state actor.  See id.

3   (arbitrary confiscation and destruction of property sufficient to state retaliation claim).  Thus,

4   plaintiff has pled facts sufficient to meet the first and third prongs of a retaliation claim.

5           With respect to the fourth prong, the proper inquiry is not whether the cell search and

6   destruction of property actually chilled plaintiff's exercise of his First Amendment rights.  "[It]

7   would be unjust to allow a defendant to escape liability for a First Amendment violation merely

8   because an unusually determined plaintiff persists in his protected activity. . . ."  Mendocino

9   Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).  The correct inquiry is to

10  determine whether an official's acts would chill or silence a person of ordinary firmness from

11  future First Amendment activities.  Robinson, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr.,

12  192 F.3d at 1300).  Here, plaintiff pled that his actions were chilled by the search of his bed area

13  in this manner.  Thus, plaintiff has satisfied the fourth prong of Robinson.

14          The second prong of a prisoner retaliation claim focuses on causation and motive.  See

15  Brodheim, 584 F.3d at 1271.  A plaintiff must show that his protected conduct was a

16  "'substantial' or 'motivating' factor behind the defendant's conduct."  Id. (quoting Soranno's, 874

17  F.2d at 1314.  Although it can be difficult to establish the motive or intent of the defendant, a

18  plaintiff may rely on circumstantial evidence.  Bruce, 351 F.3d at 1289 (finding that a prisoner

19  established a triable issue of fact regarding prison officials' retaliatory motives by raising issues

20  of suspect timing, stale evidence, and statements); Hines v. Gomez, 108 F.3d at 267-68; Pratt, 65

21  F.3d at 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of

22  retaliatory intent").  However, mere allegations of a retaliatory motive will not defeat a summary

23  judgment motion.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

24          Here, it appears that plaintiff claims that his bed area was searched "immediately" after

25  defendant Popovits responded to plaintiff's CDCR 22 forms.  However, while "timing can be

26  properly considered as circumstantial evidence of retaliatory intent," there generally must be

27  something more than timing alone to support an inference of retaliatory intent.  Pratt, 65 F.3d at

28  808.  Retaliation is not established simply by showing adverse activity by defendant after

13

1  protected speech; plaintiff must show a nexus between the two.  See Huskey v. City of San Jose,

2  204 F.3d 893, 899 (9th Cir. 2000) (a retaliation claim cannot rest on the logical fallacy of post

3  hoc, ergo propter hoc, i.e., "after this, therefore because of this").  As argued by defendants,

4  plaintiff's dissatisfaction with the denial of his CDCR 22 forms does not demonstrate defendant

5  Popovits acted with retaliatory intent.

6        However, in the FAC, plaintiff avers that in conjunction with Popovits' three responses,

7  Popovits "dispatched" custody officers to ransack plaintiff's bed area.  (ECF No. 9 at 11.)

8  Plaintiff also identifies Popovits as defendant Sanchez's supervisor.  (ECF No. 9 at 7.)  Moreover,

9  plaintiff now declares that he had never been subject to this type of search before, or since.  (ECF

10 No. 16 at 7.)  His statement in his administrative appeal supports this statement:  "The entire time

11 [plaintiff] has been housed at this prison this event is the only time his property was trashed in

12 this manner, [plaintiff's] belongings were left spread out in a 30 foot radius."  (ECF No. 124 at

13 152.)  These facts, taken together, are sufficient to raise an inference of retaliatory motive.  If

14 plaintiff can prove that defendant Popovits ordered Ringler and Ruiz (ECF No. 12 at 122) to

15 search plaintiff's bed area, even though Popovits was not their immediate supervisor, shortly after

16 Popovits denied plaintiff's CDCR 22 forms, such allegations are sufficient to meet the second

17 prong of Robinson at this stage of the proceedings.

18       As to the fifth prong of Robinson, plaintiff avers that the search served no legitimate

19 penological goal.  Such allegation, when read with plaintiff's allegations of retaliation for the

20 filing of the CDCR 22 forms, are sufficient to satisfy the pleading requirement to meet the fifth

21 prong.  Austin v. Terhune, 367 F.3d 1167, 1171 n.3 (9th Cir. 2004).

22       Because plaintiff has alleged sufficient facts to satisfy all five prongs of his retaliation

23 claim against defendant Popovits, but did not include all of the facts in support in the FAC,

24 defendants' motion to dismiss such claim should be granted, but plaintiff should be granted leave

25 to amend to include each fact he contends supports his claim that Popovits acted with a retaliatory

26 motive on April 17, 2013.

27 ////

28 ////

6. Defendant Wilkinson

In his FAC, plaintiff alleges that by March 14, 2013, defendant Wilkinson "was fully aware of plaintiff's reputation for filing grievances." (ECF No. 9 at 14.)  Plaintiff states that on March 14, he "engaged in the protected conduct of complaining to her about his conditions of confinement and telling her he would grievance her if she continued participating in the violation of his Eighth Amendment rights."  (Id.)  Plaintiff asserts that because of his protected conduct, Wilkinson retaliated against him by writing an RVR against him on March 21, 2013.  Plaintiff claims her actions chilled his First Amendment rights because he believed she would punish him for their exercise, and her action, which was allegedly prohibited by prison regulations, did not advance a correctional goal.  (ECF No. 9 at 14.)

In support of such claim, plaintiff alleges that on March 14, 2013, he and defendant Wilkinson argued about whether outdoor exercise was a right or a privilege.  (ECF No. 9 at 8.)  Defendant Wilkinson then called defendant Sanchez, Wilkinson's supervisor, during which they agreed that plaintiff would not be permitted outside the housing unit for the entire ninety day period.  Plaintiff claims that Wilkinson threatened to handcuff and take plaintiff to "the hole" if he attempted to exit the housing unit.  (ECF No. 9 at 8.)  Plaintiff then told Wilkinson that plaintiff had to file another grievance regarding his right to outdoor exercise.  (ECF No. 9 at 8-9.)

On March 21, 2013, defendant Wilkinson conducted a search of plaintiff's bed area while plaintiff was away.  Wilkinson claimed that there was a state sheet hanging from plaintiff's bunk, and that she had observed such misconduct on March 14 and 20 as well, so she issued an RVR for the alleged misconduct.  Plaintiff claims witnesses executed affidavits confirming that there was nothing hanging from plaintiff's bunk on March 21.[4]  (ECF No. 9 at 9.)

Defendants argue, *inter alia*, that plaintiff fails to state a cognizable retaliation claim because verbal complaints to correctional staff do not constitute protected conduct.

In opposition, plaintiff contends that Wilkinson's conduct was "virtually identical to that of the correctional officer in Hines v. Gomez, 108 F.3d 265 (1997)," and plaintiff has alleged

_____

[4]  Plaintiff provided two of these affidavits with his July 8, 2014 filing.  (ECF No. 25 at 20-21.)

15

1   sufficient facts because Sanchez had reported plaintiff's prolific use of the prison grievance

2   system to building staff on March 8, and "there is little doubt that subject was the focus of his

3   March 14 phone conversation with Wilkinson."  (ECF No. 20 at 6-7.)

4          However, in <u>Hines</u>, much evidence was admitted at trial that supported inferences that

5   Hines had a reputation for complaining, Hines had filed many grievances, and Hines had

6   informed the correctional officer that Hines was going to grieve him on the very morning of the

7   incident giving rise to the suit.  <u>Hines</u>, 108 F.3d at 268.  Here, plaintiff specifically states that his

8   retaliation claim is based on the protected conduct of complaining to her about his conditions of

9   confinement and telling her he would grieve her.  Although he states that Wilkinson was "fully

10  aware" of his reputation for filing grievances, plaintiff provides no factual support for such

11  reputation or that Wilkinson was aware.  Rather, in the FAC, plaintiff draws broad conclusions

12  from the mere posting of his punishments in the housing unit from the February 27, 2013 RVR,

13  without factual support.  Indeed, the RVR punished plaintiff for disruptive behavior, not for being

14  a "prolific use of the prison grievance system."  In addition, plaintiff does not state that he

15  witnessed the telephone call between Sanchez and Wilkinson, or provide factual allegations

16  supporting his conclusion that plaintiff's prolific filing of grievances was the subject of their

17  conversation, rather than whether plaintiff would be deprived of all outdoor exercise for the entire

18  ninety day period.  Moreover, plaintiff now clarifies that his use of the term "grievance" in the

19  FAC was used in a general way, not specifically meaning a 602 appeal which is commonly

20  referred to as a grievance.  Thus, it is unclear what 5 "grievances" plaintiff had filed by the March

21  8, 2013 RVR hearing (ECF No. 20 at 4.)  If plaintiff was referring to CDCR 22 forms sent to

22  various prison officials, it is even more unclear how defendant Wilkinson was "fully aware" of

23  such writings.

24         Finally, as in <u>Hines</u>, plaintiff threatened that he would grieve the deprivation of outdoor

25  exercise, but he did so on March 14, 2013, and his bed area was not searched by Wilkinson until

26  March 21, 2013.  Thus, the timing was not suspect as it was in <u>Hines</u>, where the alleged

27  retaliatory conduct occurred on the very day such statement was made.

28  ////

For all of these reasons, defendants' motion to dismiss plaintiff's retaliation claim against defendant Wilkinson is granted.  In an abundance of caution, plaintiff is granted leave to amend his claim against Wilkinson.  However, plaintiff is admonished that he must allege specific facts demonstrating the alleged act of searching his bed area was based on conduct protected by the First Amendment, and supporting a causal connection to defendant Wilkinson.

C.  Eight Amendment Claim:  Alleged Deprivation of Outdoor Exercise

Defendants confirm that they did not move to dismiss plaintiff's Eighth Amendment claim against defendant Sanchez.  (ECF No. 23 at 6 n.1.)  Thus, the court addresses the motion to dismiss plaintiff's Eighth Amendment claims solely as to defendants Popovits, Young, and Swarthout.

In the FAC, plaintiff alleges that illegal punishment was imposed on March 8, 2013, depriving plaintiff of all outdoor exercise for ninety days, from March 8, 2013, until June 6, 2013, in violation of his Eighth Amendment rights.  Plaintiff notified defendants Swarthout and Popovits of the constitutional violation by sending them CDCR 22 forms.  On April 17, 2013, defendant Popovits responded, denying plaintiff's request and claiming outdoor exercise was a "privilege."  (ECF No. 9 at 11.)  Plaintiff asserts that each supervisory defendant had a legal duty to restore plaintiff's access to outdoor exercise and by failing to act after March 18, 2013, when they had full knowledge of the violation, their failure to act constituted "deliberate and malicious choices" to violate plaintiff's constitutional rights.  (ECF No. 9 at 11.)  Further, plaintiff claims that due to such deprivation he suffered back and neck pain, headaches, muscle aches, lethargy, and respiratory problems during this deprivation, due to the "massive amounts of contaminants in the housing unit."  (ECF No. 9 at 8.)

In their motion, defendants contend that plaintiff failed to plead facts demonstrating the subjective prong because he does not allege that either Swarthout or Popovits were involved in the adjudication of the RVR, or in effecting the punishment.  Thus, defendants contend that plaintiff has not alleged that each defendant had a sufficiently culpable state of mind in causing or allowing the deprivation to occur.  (ECF No. 18-1 at 12.)

////

17

1    In opposition to the motion, plaintiff claims that "all supervisory defendants were required

2    to restore plaintiff's . . . right to outdoor exercise, once the violation came to their attention."

3    (ECF No. 20 at 7.)  Plaintiff asserts that defendant Popovits learned of the alleged violation on

4    April 17, 2013 (ECF No. 12 at 146-52), defendant Young learned of the alleged violation on

5    April 19, 2013 (ECF No. 12 at 150), and defendant Swarthout learned of the alleged violation on

6    March 29, 2013 (ECF No. 12 at 146-47).  Plaintiff claims that the record demonstrates the

7    liability of these defendants, and that each defendant was "culpable" and acted with "deliberate

8    indifference."  (ECF No. 20 at 7.)

9    Outdoor exercise is a basic human need protected by the Eighth Amendment, and the

10    denial of outdoor exercise may violate the Constitution, depending on the circumstances.

11    Richardson v. Runnels, 594 F.3d 666 (9th Cir. 2010); Norwood v. Vance, 591 F.3d 1062, 1070

12    (9th Cir. 2010).  While the temporary denial of outdoor exercise with no medical effects is not a

13    substantial deprivation, May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), in this Circuit, the

14    deprivation of regular outdoor exercise for a prolonged period, is sufficient to meet the objective

15    requirement of the Eighth Amendment analysis.  Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th

16    Cir. 2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment

17    requirement); Allen v. Sakai, 48 F.3d 1082, 1086-88 (9th Cir. 1995) (forty-five minutes of

18    outdoor exercise per week for six weeks meets objective Eighth Amendment requirement).  In

19    determining whether a deprivation of outdoor exercise is sufficiently serious, the inquiry is fact

20    specific; the Court must consider the circumstances, nature, and duration of the deprivation.

21    Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  Regular outdoor exercise is necessary

22    "unless inclement weather, unusual circumstances, or disciplinary needs ma[k]e that impossible.

23    Spain, 600 F.2d at 199.

24    Therefore, plaintiff has sufficiently pled the objective requirement.  Some form of regular

25    exercise, including outdoor exercise, "is extremely important to the psychological and physical

26    well-being" of prisoners.  See Spain, 600 F.2d at 199.

27    However, in addition, in order for a person acting under color of state law to be liable

28    under section 1983, plaintiff must demonstrate personal participation in the alleged rights

18

1   deprivation because there is no respondeat superior liability under section 1983. See Monell, 436

2   U.S. at 658 (rejecting the concept of respondeat superior liability in the section 1983 context and

3   requiring individual liability for the constitutional violation); Taylor v. List, 880 F.2d 1040, 1045

4   (9th Cir. 1989) (requiring personal participation in the alleged constitutional violations); May v.

5   Enomoto, 633 F.2d 164, 167 (9th Cir.1980) (holding that section 1983 liability must be based on

6   the personal involvement of the defendant).

7        Thus, defendants are correct that these defendants did not impose the punishment

8   challenged here.  However, while defendants Swarthout, Young, and Popovits were not involved

9   in the adjudication of the RVR, defendant Swarthout was involved in the administrative appeal

10   plaintiff filed in which he challenged the validity of such punishment.  Defendants did not

11   specifically address plaintiff's claims that defendants failed to correct the alleged constitutional

12   violation once they became aware of the deprivation.

13        Prisoners may be able to state a cognizable civil rights claim if there is an ongoing

14   constitutional violation and the prison employee or appeals coordinator had the authority and

15   opportunity to prevent the ongoing violation, yet failed to prevent it.  See Taylor v. List, 880 F.2d

16   at 1045 (supervisory official liable under Section 1983 if he or she knew of a violation and failed

17   to act to prevent it).

18        Here, plaintiff provided a copy of defendant Swarthout's second level review of plaintiff's

19   grievance challenging the lengthy suspension of plaintiff's outdoor exercise, Log No. CSP-S-13-

20   0768.  (ECF No. 12 at 96.)  Defendant Swarthout wrote:

21           Appellant claims that his constitutional right to outdoor exercise has
              been violated since March 8, 2013 due to an illegal punishment
22           imposed by the SHO.  DOM section 52080.5.6 Dispositions of
              Serious Disciplinary Charges clearly states:  Designated privileges
23           may be temporarily suspended for up to ninety (90) days from the
              date the inmate is or was deprived of the privileges.  Therefore no
24           constitutional rights have been violated.

25   (ECF No. 12 at 96.)  Thus, defendant Swarthout was in a position to address the alleged

26   constitutional violation, but failed to do so.  However, the issue of whether or not defendant

27   Swarthout's conclusion that a prison regulation potentially trumps the United States Constitution

28   constitutes deliberate indifference or a culpable state of mind was not addressed by the parties

19

1    because plaintiff did not include such assertion in his FAC.  Moreover, it appears that plaintiff

2    contends that he should not have received the maximum punishment because this was his first

3    rules violation.  Given all the punishment meted out to plaintiff, he may be able to demonstrate

4    that disciplinary needs did not require the deprivation of access to outdoor exercise, or such a

5    lengthy deprivation.  Accordingly, defendants' motion to dismiss this claim as to defendant

6    Swarthout is granted, but with leave to amend.

7          However, plaintiff fails to assert, and the record does not reflect, a similar role for

8    defendants Young or Popovits.  Defendants Young's and Popovits' roles of receiving or

9    responding to a CDCR 22 request for interview form does not, standing alone, demonstrate their

10   involvement in the adjudication of the RVR or in addressing plaintiff's formal 602 appeal

11   challenging the punishment.  Review of the documents provided with appeal Log No. CSP-S-13-

12   0768 demonstrates that Young and Popovits did not review such appeal.  (ECF No. 12 at 88-96)

13   Therefore, because defendants Young and Popovits were not involved in adjudicating the RVR or

14   addressing plaintiff's formal appeal concerning the Eighth Amendment violation, plaintiff's

15   Eighth Amendment claims against defendants Young and Popovits should be dismissed.

16   IV.  Plaintiff's Motion to Strike

17         On July 8, 2014, plaintiff filed a motion to strike, claiming defendants' reply contains

18   "multiple violations of Rule 11," and contends that defendants intentionally misstated the record

19   and plaintiff's arguments.  Just as advocacy is an art form, so is parsing a pro se litigant's

20   pleadings.  The undersigned does not find any Rule 11 violations in defendants' reply.[5]  Plaintiff

21   is cautioned that he should argue the facts and the law, and refrain from characterizing counsel's

22   intentions.  Moreover, to the extent plaintiff attempted to use the motion to strike to gain one

23   more bite at the apple, such effort is unavailing.  There is no provision in the local rules for a

24   surreply.  Local Rule 230(l) provides for a moving brief, an opposition, and a reply.  Briefing for

25   motions in prisoner actions is final after the time for reply has expired.

26

27   [5]  With regard to the issue of authentication, defendants are correct that exhibits must be
     authenticated for admission at trial as evidence.  But, as set forth above, the undersigned has
28   reviewed plaintiff's exhibits in connection with this motion.

1    Plaintiff's motion to strike is denied.

2    V.  Conclusion

3        For all of the above reasons, defendants' motion to dismiss should be granted in part and

4    denied in part.  Because defendants did not move to dismiss plaintiff's retaliation claims based on

5    Kosher's actions following the November 7 and 9, 2012, and February 23, 2013 grievances, or to

6    dismiss plaintiff's Eighth Amendment claim against defendant Sanchez based on the imposition

7    of a ninety day loss of access to outdoor exercise, this action proceeds on such claims.  If plaintiff

8    chooses to file a second amended complaint, he should include such claims therein.

9        Accordingly, IT IS HEREBY ORDERED that:

10        1.  The Clerk of the Court is directed to assign a district judge to this case;

11        2.  Plaintiff's March 7, 2014 motion for partial summary judgment (ECF No. 16) is denied

12    without prejudice;

13        3.  Plaintiff's July 8, 2014 motion for partial summary judgment (ECF No. 25) is denied

14    without prejudice;

15        4.  Plaintiff's motion to strike defendants' reply (ECF No. 24) is denied; and

16        5.  Plaintiff's retaliation claim against defendant Young is dismissed from this action.

17    Fed. R. Civ. P. 41(a).

18        IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 18) be

19    granted in part, and denied in part, as set forth below:

20        1.  Plaintiff's First Amendment retaliation claims against defendants Swarthout and

21    Popovits in connection with plaintiff's outdoor exercise claim, as well as his Eighth Amendment

22    claims against defendants Young and Popovits, be dismissed with prejudice.

23        2.  The following claims be dismissed without prejudice to plaintiff renewing such claims

24    in a second amended complaint:

25            a.  Plaintiff's retaliation claim against defendant Sanchez in connection with the

26    rules violation imposed on March 8, 2013;

27            b.  Plaintiff's retaliation claim against defendant Popovits based on the April 17,

28    2013 bunk area search;

c. Plaintiff's retaliation claim against defendant Wilkinson based on the March 21, 2013 search; and

d. Plaintiff's Eighth Amendment claim as to defendant Swarthout.

3. Plaintiff be granted leave to file a second amended complaint within thirty days from the date of any order by the district court adopting the instant findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 4, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/witk1931.mtd

22