UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WITKIN,<br><br>          Plaintiff,<br><br>     v.<br><br>G. SWARTHOUT, et al.,<br><br>          Defendants. | No.  2:13-cv-1931 KJN P<br><br><br>ORDER |

Plaintiff is a state prisoner, proceeding pro se and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983.  Defendants' motion to dismiss was partially granted, and plaintiff was granted leave to file a second amended complaint as to some claims and some defendants. (ECF No. 29.)  Plaintiff's verified second amended complaint ("SAC") is now before the court. Plaintiff again raises Eighth Amendment and retaliation claims against multiple defendants.

Eighth Amendment Claims

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  To show a violation of the Eighth Amendment, plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  Lack of outdoor exercise for extended periods of time can be sufficiently

serious to amount to a deprivation of the "minimal civilized measure of life's necessities." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993); Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement). In addition, prisoners may be able to state a cognizable civil rights claim if there is an ongoing constitutional violation and the prison employee or appeals coordinator had the authority and opportunity to prevent the ongoing violation, yet failed to prevent it. See Taylor v. List, 880 F.2d at 1045 (supervisory official liable under Section 1983 if he or she knew of a violation and failed to act to prevent it).

Plaintiff reiterated his Eighth Amendment claim against defendant Sanchez, based on the 90 day loss of outdoor exercise, which was not subject to the motion to dismiss. (ECF No. 27 at 17.) Plaintiff again states a cognizable Eighth Amendment claim against defendant Sanchez.

Plaintiff renewed and bolstered his Eighth Amendment claim against defendant Swarthout, based on the loss of outdoor exercise. (ECF No. 30, ¶¶ 39, 44, 52.) Plaintiff states a potentially cognizable Eighth Amendment claim against defendant Swarthout.

Retaliation Claims

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Defendant Kosher

Here, plaintiff reiterated his claims that defendant Kosher retaliated against plaintiff based on his grievances against Kosher filed on November 7 and 9, 2012, and February 27, 2013. (ECF No. 30 at 13-14.) Such claims were not subject to the motion to dismiss, (ECF No. 27 at 5), and the SAC again states cognizable retaliation claims against defendant Kosher.

1     <u>Defendant Sanchez</u>

2     Plaintiff alleges that at the March 8, 2013 hearing on the rules violation issued for plaintiff's alleged disruptive behavior in the library, defendant Sanchez expressed he was "particularly upset" about some information received concerning plaintiff using the law library during work hours. (ECF No. 30 at 7.) When plaintiff inquired how Sanchez knew about that issue, Sanchez stated, "you got a bunch of appeals against my librarian. I read them." (<u>Id.</u>) Sanchez asked plaintiff why he spends so much time in the library, and asked him how many lawsuits plaintiff has. Plaintiff alleges that Sanchez then spent the next hour questioning plaintiff about the facts underlying his lawsuits, the content of the grievances, and his knowledge of prison regulations. Plaintiff avers that "[a]fter plaintiff would answer [Sanchez'] questions about the Title 15 [of the California Code of Regulations], Sanchez gave his interpretation of the same regulations which not only contradicted plaintiff but seemed to be contrary to the text." (ECF No. 30 at 7.) Plaintiff claims that the hearing "lasted about 2 hours, about 8 times longer than the average disciplinary hearing." (ECF No. 30 at 8.) Plaintiff claims he was denied every Title 15 procedural protection by Sanchez at the hearing, without explanation, and then Sanchez imposed the maximum punishment, despite the fact that plaintiff had no prior rules violations. (ECF No. 30 at 8.) In addition to losing all outdoor exercise time, plaintiff was barred from physically accessing the law library, and denied vendor packages, canteen, and telephone calls, all for a period of 90 days. (<u>Id.</u>)

    Plaintiff alleges that defendant Sanchez retaliated against plaintiff for filing a number of grievances against Sanchez' librarian (protected conduct), by imposing punishments that were disproportionately severe (adverse action) in relation to the alleged misconduct, and chilled the exercise of plaintiff's First Amendment rights. (ECF No. 30 at 14.) Plaintiff contends that because the punishment was prohibited by prison regulation, it did not advance a correctional goal. The in-depth questioning concerning plaintiff's grievances against the librarian and his knowledge of prison regulations suggest retaliation was the motivating factor for imposing severe punishment. Although plaintiff was found guilty of disruptive behavior, a legitimate penological concern in the prison setting, plaintiff has alleged sufficient facts to state a potentially cognizable

3

retaliation claim. Taking plaintiff's allegations as true, a reasonable jury could find that Sanchez imposed disproportionate punishment in retaliation for plaintiff's multiple grievances against the prison librarian based on the in depth questioning concerning such grievances during the hearing, particularly where the charges at issue were based on plaintiff's alleged behavior in the library, not the nature of his grievances, and plaintiff had no prior rules violations.

<u>Defendant Wilkinson</u>

Plaintiff alleges that defendant Wilkinson, plaintiff's regular third watch building officer, observed plaintiff receive almost daily legal mail, and frequently mailed out legal mail during her shift, and began commenting about it, which evolved into her making sarcastic comments about his lawsuits and appeals. (ECF No. 30 at 9.) Plaintiff also asserts that the majority of the incidents in the law library had occurred during third watch, and staff had discussed those incidents and plaintiff's appeals, "in some detail." (ECF No. 30 at 9.) By March 14, plaintiff states he had filed 7 inmate appeals, and a number of 602 forms. Following the March 8 rules violation hearing, defendant Sanchez contacted the housing unit to make sure plaintiff's punishments were "conspicuously posted" so the punishments would be enforced. (ECF No. 30 at 9.) Plaintiff alleges that his prison disciplinary, and his penchant for filing grievances and speaking out about his constitutional rights, were discussed in detail by building staff. Second and third watch staff would meet every day when third watch relieved second watch. Plaintiff claims there was a disagreement between some of the building officers as to whether it was legal to deny an inmate all outdoor exercise.

On March 14, plaintiff states he and Wilkinson argued about whether such exercise was a right or a privilege. Plaintiff claims Wilkinson then called Sanchez, and plaintiff could hear Wilkinson's part of the phone conversation:

> [Y]eah, he thinks he's an attorney. I always see him dropping stuff in the appeals box, I wouldn't give him anything. I'd be happy to keep him in here for 90 days. He thinks he knows everything. He gets legal mail practically every day. He's always threatening to 602 somebody or to sue somebody.

(ECF No. 30 at 10.) Plaintiff states that Wilkinson and Sanchez agreed that plaintiff would not be allowed out of the housing unit for 90 days, and Wilkinson told plaintiff he would have to file a

4

602 against her for her role in the constitutional violation. On March 14, plaintiff claims that Wilkinson began accusing him of misconduct, and made additional accusations on March 20. On March 21, Wilkinson conducted a search of plaintiff's bed area while plaintiff was away and claimed that plaintiff had a state sheet hanging from his bunk, and she had also observed such misconduct on March 14 and 20, so would issue a rules violation report. (ECF No. 30 at 10-11.) Plaintiff alleges that defendant Wilkinson told him that she had "made sure" he would not get his credits back from the February 27 rules violation, and plaintiff was unable to get his credits restored. Plaintiff contends the rules violation report was false, and provided two affidavits from witnesses who aver that nothing was hanging from plaintiff's bunk on March 21, 2013. (ECF No. 25 at 20-21.) In addition, plaintiff alleges that Wilkinson was required to write plaintiff a CDC form 128A if she witnessed such misconduct on March 14 and 20.

Plaintiff alleges that on March 14, 20, and 21, 2013, defendant Wilkinson retaliated against him "for informing her that he would have to 602 her for her role in violating his constitutional rights." (ECF No. 30 at 15.) Plaintiff asserts that Wilkinson falsely accused him three times during this seven day period, and wrote a false rules violation report because of his protected activity. Plaintiff contends that her actions chilled his First Amendment rights because he feared if he exercised them she would invent additional false rules violation reports against him. Because retaliation for using the appeals process is prohibited by prison regulations, plaintiff contends Wilkinson's actions did not advance a correctional goal.

On January 14, 2014, plaintiff provided a copy of the rules violation report issued by defendant Wilkinson, who wrote:

> On 3-21-13, at approximately 1735 hours, while conducting a security check of Building 19, I saw a state sheet hanging, blocking the view of Inmate WITKIN's bunk area of 19-132L. The sheet was hanging from the top bunk running along the frame about a quarter length of [his] bunk area. The sheet was folded in half hanging from an inmate manufactured line made from another state sheet that had been [torn]. Inmate WITKIN has been verbally counseled by me on 3-20-13 and 3-14-13, also numerous other building staff about this issue. . . .

(ECF No. 12 at 116.)

////

In the SAC, plaintiff has again claimed that Wilkinson retaliated against him "for informing her that he would have to 602 her for her role in violating his constitutional rights." (ECF No. 30 at 15.)  As defendants previously argued, plaintiff cannot demonstrate a cognizable retaliation claim based on verbal complaints.  However, plaintiff has now alleged facts demonstrating Wilkinson's escalating interest in plaintiff's protected conduct over time, and the comments she allegedly made to Sanchez over the phone suggest a retaliatory motive, as does her reference to his alleged misconduct on March 14, 2013, the same day they argued over his constitutional right to physical exercise, and she made comments about plaintiff's protected conduct to Sanchez.  Moreover, her alleged comment that she made certain plaintiff could not restore his time credits also raises an inference of retaliatory motive.  The issuance of the rules violation report, which references the March 14 and 20, 2013 incidents, is the adverse action, which plaintiff claims chilled his First Amendment rights, and did not advance correctional goals.  Plaintiff has stated a potentially cognizable retaliation claim against defendant Wilkinson based on the allegedly false rules violation report.

Defendant Popovits

Plaintiff alleges that on April 17, 2013, defendant Popovits responded to plaintiff's April 11 CDCR 22 directed to Popovits, as well as plaintiff's March 26 and 27 filings with Swarthout, denying plaintiff's requests.  (ECF No. 30 at 12.)  On the same day, April 17, 2013, plaintiff claims defendant Popovits retaliated against plaintiff by ordering his bunk area destroyed, "dispatch[ing] custody officers to ransack plaintiff's bed area," (adverse action), because plaintiff complained to Popovits in writing about the conditions of his confinement (protected activity), which chilled plaintiff's First Amendment rights, and the destruction was not necessary to maintain the institution (no legitimate correctional goal).  (ECF No. 30 at 12, 15.)  Further, plaintiff claims that his property was searched so violently it looked like his belongings had been hit by a tornado.  Plaintiff alleges that an inmate witness asked one of the searching officers what plaintiff did "to get hit this hard," and the officer replied, "Captain said the guy's a smart ass, thinks he's a lawyer, thinks he's got some exercise coming."  (ECF No. 30 at 13.)  Plaintiff further avers that during his entire prison term, his property had not been trashed in the manner it

was on April 17, 2013, and that his personal fan was completely destroyed and inoperable. (Id.) His statement in his administrative appeal supports this statement: "The entire time [plaintiff] has been housed at this prison this event is the only time his property was trashed in this manner, [plaintiff's] belongings were left spread out in a 30 foot radius." (ECF No. 124 at 152.) Such allegations as to the timing, the witness' statement, and the nature of the search suggest a retaliatory motive. Thus, plaintiff states a potentially cognizable retaliation claim against defendant Popovits.

No Other Cognizable Claims

It appears that plaintiff included some factual allegations that pertained to claims dismissed with prejudice. (ECF No. 29.) For example, plaintiff reiterated his statement that defendant Popovits failed to correct the allegedly illegal punishment denying him outdoor exercise. (ECF No. 30 at 8.) However, plaintiff properly included only those causes of action permitted (ECF No. 30 at 13-16) pursuant to the March 5, 2015 order. (ECF No. 29.) To the extent that extraneous factual allegations were inadvertently included, defendants are relieved of any obligation to respond thereto.

Conclusion

As set forth above, the SAC states potentially cognizable Eighth Amendment claims for relief against defendants Sanchez and Swarthout, and First Amendment claims against defendants Kosher, Sanchez, Wilkinson, and Popovits, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b). If the allegations of the SAC are proven, plaintiff has a reasonable opportunity to prevail on the merits of this action.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Service is appropriate for the following defendants: Sanchez, Swarthout, Kosher, Wilkinson, and Popovits; and

////
////
////
////

2. Within twenty-one days from the date of this order, defendants shall file a responsive pleading.

Dated:  December 18, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/witk1931.1.amd